UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
-------------------------------------------------------------------x
FENG SHAN HAN and
LE ZHANG,
*on behalf of themselves and others similarly situated,*
                                        Plaintiffs,

                v.

MAY DYNASTY LLC
        d/b/a Crazy Dumpling and
QUN SHEN,
                                        Defendants.
-------------------------------------------------------------------x

Case No. 24-cv-00654

**COLLECTIVE & CLASS ACTION COMPLAINT**

Jury Trial Demanded

Plaintiffs FENG SHAN HAN (hereinafter referred to as "Han") and LE ZHANG (hereinafter referred to as "Zhang") (hereinafter collectively with Han referred to as "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Troy Law, PLLC, hereby bring this complaint against Defendants MAY DYNASTY LLC d/b/a Crazy Dumpling (hereinafter referred to as "Crazy Dumpling" or "LLC Defendant") and QUN SHEN (hereinafter referred to as "Shen" or "Individual Defendant") (Individual Defendant hereinafter collectively with LLC Defendant referred to as "Defendants"), and allege as follows:

## INTRODUCTION

1. Plaintiffs bring this action on behalf of themselves and other similarly situated employees against Defendants for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, and Virginia Wage Theft Prevention Law ("VAWTPL"), Va. C. §§ 40.1-29(A), (C), (G), (J), 40.1-29.3(B), (C), respectively arising from Defendants' various willful and unlawful employment policies, patterns and practices.

2. Plaintiffs bring this action on behalf of themselves, and all similarly situated current and former non-exempt employees who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b), and all similarly situated current and former non-exempt employees as to whom

Plaintiffs can satisfy the provisions of Rule 23 of the Federal Rules of Civil Procedure, to remedy violations of the wage-and-hour provisions of the FLSA and VAWTPL that occurred at Defendants' business.

3. Plaintiffs allege pursuant to the FLSA that they are entitled to recover from Defendants: (1) unpaid overtime wages (2) liquidated damages, (3) post-judgment interest, and (4) reasonable attorneys' fees and costs.

4. Plaintiffs allege pursuant to the VAWTPL that they are entitled to recover from Defendants: (1) unpaid earned wages, (2) unpaid overtime wages, (3) liquidated damages, (4) pre-judgment and post-judgment interest, and (5) reasonable attorneys' fees and costs.

## JURISDICTION & VENUE

5. This Court has subject-matter jurisdiction over this controversy under the FLSA, 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiffs' VAWTPL claims under 28 U.S.C. § 1367(a).

7. Venue is proper in the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1391(b), (c), because Defendants conduct business in the Commonwealth of Virginia, and the acts and omissions giving rise to the claims alleged herein took place within the Eastern District of Virginia.

## PLAINTIFFS

8. Han was employed by Defendants from on or about November 11, 2022 through on or about January 30, 2023 to work as a "fry wok" (*i.e.*, a type of stir-fry cook) for Crazy Dumpling.

9. Zhang was employed by Defendants from on or about April 5, 2022 through on or about January 30, 2023 to work as a miscellaneous worker performing various tasks as-needed for

Crazy Dumpling, including kitchen work, cashiering, and purchasing ingredients for the restaurant.

## DEFENDANTS

### *LLC Defendant*

10. Crazy Dumpling was, throughout the period relevant to this lawsuit, and remains, a domestic limited liability company with a registered address at 4445 Corporation Lane, Suite 264, Virginia Beach, VA 23462.

11. Prior to on or about April 14, 2022, Crazy Dumpling's principal place of business, where it operated a Chinese restaurant, was 696 Warrenton Road, Fredericksburg, VA 22406.

12. On or about May 23, 2022, Crazy Dumpling reopened at a new principal place of business, 1320 Emancipation Highway, Apartment 14, Fredericksburg, VA 22401, where it operates a Chinese restaurant.

13. Crazy Dumpling was, throughout the period relevant to this lawsuit, an "enterprise engaged in commerce" within the meaning of the FLSA.

14. Crazy Dumpling was, throughout the period relevant to this lawsuit, an enterprise with a gross annual revenue in excess of $500,000.00 per year. Upon information and belief, Crazy Dumpling had approximately $50,000.00 in gross revenue per month.

15. Throughout the period relevant to this lawsuit, employees of Crazy Dumpling, including Plaintiffs, handled, sold, or otherwise worked with goods or materials that had been moved in or produced for commerce, including but not limited to ingredients and cleaning supplies.

16. Beginning on or about May 23, 2022 and throughout the remainder of the period relevant to this lawsuit, Crazy Dumpling was open to the public: from about 10:30 hours through about 21:00 hours on Tuesdays through Saturdays; and from about 10:30 hours through about 20:00 hours on Sundays.

*Individual Defendant*

17. Shen is a member of the LLC Defendant.

18. Throughout the period relevant to this lawsuit, Shen had the power to hire and fire employees of Crazy Dumpling.

19. Shen hired the Plaintiffs, as well as other employees of Crazy Dumpling.

20. Throughout the period relevant to this lawsuit, Shen supervised and controlled the work schedules and conditions of employment of employees of Crazy Dumpling.

21. Shen set Plaintiffs' work schedules as well as those of other employees, and from time to time adjusted Plaintiffs' work schedules as described below.

22. Shen was present on the premises of Crazy Dumpling from one (1) to three (3) days each week to directly supervise Plaintiffs and other employees.

23. Shen housed employees of Crazy Dumpling, including Han, at her property, at 1400 Alum Spring Road, Fredericksburg, VA 22401, which was used as an employee dormitory.

24. Throughout the period relevant to this lawsuit, Shen determined the pay rates of employees of Crazy Dumpling.

25. Shen determined the pay rates of Plaintiffs and other employees.

26. From time to time, Shen paid Plaintiffs and other employees such wages as they were paid; and promised Plaintiffs certain back wages.

27. Throughout the period relevant to this lawsuit, Shen was responsible for keeping and maintaining records of employees of Crazy Dumpling.

28. Shen acted willfully, intentionally, and maliciously and is an employer within the meanings of the FLSA and VAWTPL, and is jointly and severally liable with LLC Defendant.

**STATEMENT OF FACTS**

29. Plaintiffs have fulfilled all conditions precedent, or such conditions have been

waived.

### *Feng Shan Han*

30. Han was employed by Defendants from on or about November 11, 2022 through on or about January 30, 2023 to work as a "fry wok" for Crazy Dumpling.

31. Throughout his employment, except the two (2) weeks beginning December 5, 2022 and January 2, 2022, respectively, Han worked about sixty-nine (69.00) hours per week: from about 09:30 hours through about 21:00 hours, Tuesdays through Sundays.

32. During the two (2) weeks beginning December 5, 2022 and January 2, 2022, respectively, Han worked about eighty and one-half (80.50) hours per week: from about 09:30 hours through about 21:00 hours, seven (7) days per week.

33. Han's working days began one (1) hour before Crazy Dumpling's opening hour because he needed to set up and prepare his workstation and the kitchen generally to serve customers.

34. Han's working days ended one (1) hour after Crazy Dumpling's closing hour on Sundays because he needed to help thoroughly clean his workstation and the kitchen generally before the restaurant closed for Monday.

35. Throughout his employment, Han was given three notional ten-minute (10-minute) meal breaks per day—but these were required to be counted as working hours and not *bona fide* meal periods within the meaning of the FLSA, because they were each less than thirty (30) minutes long, and furthermore because Han was not completely relieved from work during them, but had to remain on call to cook if an order came in while he was eating.

36. Throughout his employment, Han was promised compensation by a cash salary of five thousand dollars ($5,000.00) per month, plus lodging in the employee dormitory located at 1400 Alum Spring Road, Fredericksburg, VA 22401 worth approximately five hundred dollars

($500.00) per month.

37. Han was not given any notice that his five hundred dollar ($500.00) lodging cost would be taken as a credit or allowance against his wages.

38. Accordingly, Han's monthly compensation is five thousand five hundred dollars ($5,500.00): the sum of his five thousand dollar ($5,000.00) cash salary and his five hundred dollar ($500.00) lodging benefit.

39. Han was paid his cash salary by cash, off the books and without a wage statement or paystub.

40. Han was not always paid five thousand dollars ($5,000.00) cash each month, but was frequently shorted pay on the promise that the difference would be made up later.

41. Over the course of his employment, Han's unpaid back salary amounted to approximately six thousand eight hundred sixty-five dollars ($6,865.00).

42. Han's monthly compensation of five thousand five hundred dollars ($5,500.00) amounted to a regular hourly wage of eighteen dollars and thirty-nine cents ($18.39) for those weeks he worked sixty-nine (69.00) hours; and to fifteen dollars and seventy-seven cents ($15.77) for those weeks he worked eighty and one-half (80.50) hours.

43. Han's salary did not include an overtime premium of one-half times (0.5x) those regular hourly pay rates for hours worked in excess of forty (40) hours each week.

44. Defendants committed the foregoing acts knowingly, willfully and maliciously, against Han, the collective and the class.

### *Le Zhang*

45. Zhang was employed by Defendants from on or about April 5, 2022 through on or about January 30, 2023 to work as a miscellaneous worker performing various tasks as-needed for Crazy Dumpling, including kitchen work, cashiering, and purchasing ingredients for the restaurant.

46. From on or about April 5, 2022 through on or about May 22, 2022, before the restaurant at 1320 Emancipation Highway opened to the public, Zhang only worked about thirty-eight and one-half (38.50) hours per week: about five and one-half (5.50) hours each day, seven (7) days per week.

47. However, from on or about May 23, 2022 through on or about January 30, 2023, Zhang worked seventy-three (73.00) hours per week at 1320 Emancipation Highway: about four (4.00) hours on Mondays purchasing ingredients for the restaurant while it was closed; and from about 09:30 hours through about 21:00 hours Tuesdays through Sundays.

48. After on or about May 23, 2022, Zhang's working days began one (1) hour before Crazy Dumpling's opening hour because he needed to help set up and prepare the kitchen to serve customers.

49. After on or about May 23, 2022, Zhang's working days ended one (1) hour after Crazy Dumpling's closing hour on Sundays because he needed to help thoroughly clean the restaurant before it closed for Monday.

50. From on or about May 23, 2022 through on or about January 30, 2023, Zhang was given three notional ten-minute (10-minute) meal breaks per day—but these were required to be counted as working hours and not *bona fide* meal periods within the meaning of the FLSA, because they were each less than thirty (30) minutes long, and furthermore because Han was not completely relieved from work during them, but had to remain on call to work if a task needed to be done while he was eating.

51. Throughout his employment, Zhang was promised compensation by a cash salary of six thousand dollars ($6,000.00) per month.

52. Zhang was paid his cash salary by check, and was issued an IRS form W-2, but was

not issued wage statements or paystubs with each payment of wages.

53. However, Zhang was not always paid six thousand dollars ($6,000.00) each month, but was frequently shorted pay on the promise that the difference would be made up later.

54. Over the course of his employment, Zhang's unpaid back salary amounted to approximately fifteen thousand dollars ($15,000.00).

55. Additionally, before Crazy Dumpling reopened at 1320 Emancipation Highway, Shen induced Zhang to give her ten thousand dollars ($10,000.00) in exchange for a promise of membership in the LLC Defendant.

56. Zhang gave Shen the ten thousand dollars ($10,000.00), but was not made a member of the LLC Defendant and remained a W-2 employee.

57. Zhang was not an exempt employee, because, among other reasons: his primary duty was not management of the restaurant or a restaurant department; and he did not regularly supervise or control the work of other employees.

58. From on or about March 23, 2022 through on or about January 30, 2023, Zhang's monthly compensation of six thousand dollars ($6,000.00) amounted to a regular hourly wage of eighteen dollars and ninety-seven cents ($18.97).

59. Zhang's salary did not include an overtime premium of one-half times (0.5x) that regular hourly pay rates for hours worked in excess of forty (40) hours each week.

60. Defendants committed the foregoing acts knowingly, willfully and maliciously, against Zhang, the collective and the class.

## COLLECTIVE ALLEGATIONS

61. Plaintiffs bring their FLSA claims individually and on behalf of other current and former non-exempt workers employed by Defendants on or after the date that is three (3) years before the filing of this Complaint, through the entry of judgement in this case, who were paid

salaries which did not include overtime premiums of one-half times (0.5x) their regular hourly pay rates for hours worked in excess of forty (40) hours each week (the "Collective").

## CLASS ALLEGATIONS

62. Plaintiffs bring their VAWTPL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all current and former non-exempt workers employed by Defendants on or after the date that is three (3) years before the filing of this Complaint, through the entry of judgement in this case, who were paid salaries which did not include overtime premiums of one-half times (0.5x) their regular hourly pay rates for hours worked in excess of forty (40) hours each week (the "Class").

63. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

### *Numerosity*

64. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

### *Commonality*

65. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

      a.      Whether Defendants employed Plaintiffs and the Class members within the meaning of the VAWTPL;

      b.      Whether Plaintiffs and the Class members are entitled to and paid overtime at one and one-half times their regular hourly wages under the VAWTPL;

      c.      At what common rate, or rates subject to common method of calculation were and are Defendants required to pay the Class members for their work.

*Typicality*

66. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same business practices of Defendants, as alleged herein, of failing to pay overtime premiums. Defendants' enterprise-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

67. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage-and-hour employment litigation cases.

*Superiority*

68. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against

employer defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

69. Upon information and belief, Defendants and other employers throughout the Commonwealth violate the VAWPTL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### VIOLATION OF 29 U.S.C. § 207(A)(1)—FAILURE TO PAY OVERTIME BROUGHT ON BEHALF OF PLAINTIFFS AND THE COLLECTIVE

70. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

71. Section 207(a)(1) of the FLSA provides that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

72. Throughout their employments, Plaintiffs were paid a flat monthly salaries, which did not include premiums of one-half times (0.5x) their equivalent regular hourly wages, in addition to their regular hourly wages, for hours worked beyond the fortieth (40th) hour in a week.

73. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of… section 207 of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

74. Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Plaintiffs overtime.

## COUNT II.
### VIOLATION OF VA. C. § 40.1-29(A), (C)—FAILURE TO PAY WAGES
### BROUGHT ON BEHALF OF PLAINTIFFS AND THE CLASS

75. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

76. Section 40.1-29(A) of the VAWTPL provides in relevant part that "[u]pon termination of employment an employee shall be paid all wages or salaries due him for work performed prior thereto; such payment shall be made on or before the date on which he would have been paid for such work had his employment not been terminated."

77. Additionally, Section 40.1-29(C) of the VAWTPL provides that "[n]o employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes in accordance with law, without the written and signed authorization of the employee. On each regular pay date, each employer, other than an employer engaged in agricultural employment including agribusiness and forestry, shall provide to each employee a written statement, by a paystub or online accounting, that shows the name and address of the employer; the number of hours worked during the pay period if the employee is paid on the basis of (i) the number of hours worked or (ii) a salary that is less than the standard salary level adopted by regulation of the U.S. Department of Labor pursuant to § 13(a)(1) of the federal Fair Labor Standards Act, 29 U.S.C. § 213(a)(1), as amended, establishing an exemption from the Act's overtime premium pay requirements; the rate of pay; the gross wages earned by the employee during the pay period; and the amount and purpose of any deductions therefrom. The paystub or online accounting shall include sufficient information to enable the employee to determine how the gross and net pay were calculated. An employer engaged in agricultural employment including agribusiness and forestry, upon request of its employee, shall furnish the employee a written

statement of the gross wages earned by the employee during any pay period and the amount and purpose of any deductions therefrom."

78. Plaintiffs each accumulated unpaid back salaries over the courses of their respective employments, and were not paid those back salaries after the end of their employments as required by VA. C. § 40.1-29(A).

79. Alternatively, Defendants unlawfully withheld Plaintiffs' earned wages without Plaintiffs' written authorization, and without furnishing Plaintiffs wage statements or paystubs as required by VA. C. § 40.1-29(C).

80. Section 40.1-29(G) of the VAWTPL provides that "[i]n addition to being subject to any other penalty provided by the provisions of this section, any employer who fails to make payment of wages in accordance with subsection A shall be liable for the payment of all wages due, and an additional equal amount as liquidated damages, plus interest at an annual rate of eight percent accruing from the date the wages were due."

81. Additionally, Section 40.1-29(J) of the VAWTPL provides that "[i]n addition to any civil or criminal penalty provided by this section, and without regard to any exhaustion of alternative administrative remedies provided for in this section, if an employer fails to pay wages to an employee in accordance with this section, the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. § 216(b), against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in subsection G, and reasonable attorney fees and costs. If the court finds that the employer knowingly failed to pay wages to an employee in accordance

with this section, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs."

82. Defendants knowingly, willfully, and maliciously disregarded the provisions of the VAWTPL by failing to pay Plaintiffs all their salaries earned.

## COUNT III.
### VIOLATION OF VA. C. § 40.1-29.3(B)—FAILURE TO PAY OVERTIME BROUGHT ON BEHALF OF PLAINTIFFS AND THE CLASS

83. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

84. Section 40.1-29.3(B) of the VAWTPL provides that "[a]n employer shall pay each employee an overtime premium at a rate not less than one and one-half times the employee's regular rate for any hours worked by an employee in excess of 40 hours in any one workweek. An employee's regular rate shall be calculated as the employee's hourly rate of pay plus any other non-overtime wages paid or allocated for that workweek, excluding any amounts that would be excluded from the regular rate by the federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and its implementing regulations for an individual covered by such federal act, divided by the total number of hours worked in that workweek."

85. Throughout their employments, Plaintiffs were paid a flat monthly salaries, which did not include premiums of one-half times (0.5x) their equivalent regular hourly wages, in addition to their regular hourly wages, for hours worked beyond the fortieth (40th) hour in a week.

86. Section 40.1-29.3(B) of the VAWTPL provides that "[i]f an employer fails to pay overtime wages to an employee in accordance with this section, the employee may bring an action against the employer in a court of competent jurisdiction to recover payment of the overtime wages, and the court shall award the overtime wages owed, an additional equal amount as liquidated

damages, and reasonable attorney fees and costs; however, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of this section, the court may, in its discretion, award no liquidated damages or award any amount thereof not to exceed the amount of the unpaid overtime wages."

87. Defendants knowingly, willfully and maliciously disregarded the provisions of the VAWTPL by failing to pay Plaintiffs overtime.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the Collective and Class, respectfully request that this Court enter a judgment providing the following relief:

A. At the earliest practicable time giving notice of this collective action, or authorizing Plaintiffs to give notice of this collective action, to the Collective. Such notice shall inform the Collective that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they were denied minimum wage or overtime pay;

B. A declaratory judgment that the practices complained of herein are unlawful under FLSA and VAWTPL;

C. An injunction against LLC Defendant, its owners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, including but not limited to the Individual Defendant, from engaging in each of the unlawful practices and policies set forth herein;

D. An award of unpaid overtime, and liquidated damages equal to the unpaid overtime, due to Plaintiffs and any opt-ins under the FLSA;

E. An award of unpaid back salaries, and liquidated damages equal to unpaid back salaries, due to Plaintiffs and the Class under VAWTPL;

F.  An award of unpaid overtime, and liquidated damages equal to the unpaid overtime, due to Plaintiffs and the Class under VAWTPL;

G.  An award of pre-judgment and post-judgment interest on unpaid back salaries and unpaid overtime under the VAWTPL at the six percent (6%) rate set forth by Va. C. § 6.2-302(A);

H.  An award of reasonable attorneys' fees and costs; and

I.  Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rules 38(b) and (c) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact.

Dated: April 19, 2024
       Flushing, New York

TROY LAW, PLLC
*Attorneys for Plaintiff and propoesd Collective and Class*

 /s/ Aaron B. Schweitzer
Aaron B. Schweitzer, Esq.
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com